UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Mellica Ann Ray, | ) | Civil Action  No. 5:12-3307-DCN-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| Carolyn W. Colvin,[1] Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and

Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff

brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision

of the Commissioner of Social Security ("Commissioner") denying her claim for Disability

Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that

follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.     Relevant Background

A.     Procedural History

On November 8, 2005, Plaintiff filed applications for DIB and SSI alleging a disability

onset date of August 26, 2005. Tr. 242-54. Plaintiff's SSI claim was denied initially on

November 9, 2005, because she did not meet the eligibility requirements. Tr. 17.[2] Plaintiff's

claim for DIB was denied both initially on December, 28, 2005, and on reconsideration on July

11, 2006. Tr. 158-59.   On August 21, 2006, Plaintiff requested a hearing before an

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

[2] That ruling is not on appeal.

Administrative Law Judge ("ALJ"). Tr. 202. On October 1, 2008, ALJ Karen H. Baker conducted a hearing, taking testimony from Plaintiff and Vocational Expert ("VE") Vincent Hecker. Tr. 86-112. ALJ Baker issued a decision on January 30, 2009, denying Plaintiff's claims. Tr. 163-85.   In light of newly submitted evidence, the Appeals Council granted Plaintiff's request for review and remanded the matter back to the ALJ to consider additional medical evidence. Tr. 186-89.  ALJ Baker retired, and the case was reassigned to ALJ Ivar E. Avots. Tr. 17.  On January 14, 2011, ALJ Avots conducted a hearing, taking testimony from Plaintiff and VE G. Roy Sumpter. Tr. 113-57. The ALJ issued an unfavorable decision on April 11, 2011. Tr. 17-49. The Appeals Council subsequently denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1-6. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on November 18, 2012.  ECF No. 1.

> B.     Plaintiff's Background

Plaintiff, born on February 19, 1955, was 50 years old as of her alleged onset date, and 56 years old when the ALJ rendered his decision. *See* Tr. 119.  Plaintiff graduated from high school, and her prior work history includes data processing, data entry, shipping and receiving, and packaging. *Id.* Plaintiff alleged that she became unable to work on August 26, 2005, because she had difficulty walking, had pain in her back and legs, and experienced pain when standing for an extended period of time. Tr. 294.  Plaintiff noted that she stopped working because she was laid off. *Id.*

> C.     The Administrative Hearing

>> 1.     Plaintiff's Testimony

Plaintiff appeared with counsel at her administrative hearing on January 14, 2011. Tr. 113-57. Plaintiff testified that she was 55 years old and lived with her husband, teenaged

daughter, and teenaged granddaughter. Tr. 118-19.  Plaintiff testified that her past relevant work ("PRW") included "data processing, data entry, shipping and receiving, packing things like nuts and bolts." Tr. 119.   Plaintiff testified that she had worked for MCI doing telephone sales. Tr. 121. Plaintiff also worked for Time Warner doing data entry and left that job when the company closed. Tr. 122.  Plaintiff testified that she had a "lot of pain" from her back, and she had COPD but had not completely stopped smoking cigarettes. Tr. 124-25. Plaintiff stated that if her oxygen level drops she gets "swimmy headed," so she uses oxygen to help her breathing. Tr. 127-28. She stated that at night she uses either a CPAP machine or oxygen concentration because she has sleep apnea. Tr. 129-30. Plaintiff testified she would be unable to perform her past job at MCI because she would be unable to sit for long periods and would need to move around, walk, stretch, or take pain medication. Tr. 131-32. Plaintiff testified that due to her sleep apnea, if she sat for a long period—which she defined as 30 minutes—she would fall asleep. Tr. 132. Plaintiff testified that in a typical day she would wake up, make her daughter breakfast and take her to school, then return home and do some light housework. Tr. 133-34. Plaintiff stated that in an eight-hour period she spent roughly five hours lying on her back, but if necessary she "could probably get by with laying down about two hours." Tr. 135. Plaintiff testified that she would rather not go to mental health treatment because the group meetings were depressing. Tr. 137-38. Plaintiff stated that Dr. Gettis[3] could treat her with the same medicine [for her mental health issues]. Tr. 138. Plaintiff testified that she and her daughter cook the family's main meal of the day. Tr. 142-43. She testified that her older daughters will either go to the store for her or take her to the store to do grocery shopping. Tr. 143. Plaintiff stated that she goes to church every Sunday, and tries to go on Wednesday nights. *Id.* She testified that friends visit her, and during

---

[3] Plaintiff is referring to her primary care physician, James Gettys, M.D. *See* Pl. Br. 1 (noting Dr. Gettys is primary care physician). In the hearing transcript, the provider's name is misspelled "Gettis."

the day she watches TV, she reads, and takes care of her two small dogs. Tr. 144-45. Plaintiff

testified that she takes Lortab and Morphine that was prescribed by Dr. Gettys. Tr. 145. Other

than her portable oxygen tank, Plaintiff does not use any other assistive devices. Tr. 146.

Plaintiff testified that she sleeps with a heating pad every night, uses BenGay, and takes hot

baths to relieve her pain and symptoms. Tr. 147.

### 2.    VE Testimony

VE Roy Sumpter also testified at the administrative hearing. Tr. 151-56. He indicated that

Plaintiff's PRW doing data entry was classified as sedentary with an SVP:4; telephone

solicitation was sedentary with SPV:3; shipping and receiving clerk was medium with SVP:5;

and packing clerk was medium with SVP:2, but was at a heavy level of exertion as performed by

Plaintiff. Tr. 152.

The ALJ posed a hypothetical question regarding a 55-year-old individual with a high

school education, with the same PRW as Plaintiff, exertionally limited to light work with some

postural limitations, who could "never climb a ladder, rope or scaffold, she could frequently

balance, occasionally perform all other postural activities, . . . she should avoid concentrated

exposure to fumes, odors, dust, gases such as cigarette smoking, and she should avoid even

moderate exposure to hazards such as machinery or heights. And . . . her mental impairment

would not be severe." Tr. 152. The ALJ asked if such an individual could perform any of her

past work. Tr. 152-53. The VE responded that the data entry and telephone solicitor jobs would

be the two that could be performed. Tr. 153. The ALJ modified the hypothetical to change the

postural limitations to an individual who "could only occasionally climb a ladder, rope or

scaffold, occasionally balance and stoop, frequently perform all other postural activities. And she

would have no environmental limitations." *Id.* The VE testified that the same past two jobs

would be available. *Id.* The ALJ further modified the second hypothetical to an individual who

4

could sit four hours and stand/walk two hours in an eight-hour workday, could frequently lift up to ten pounds, occasionally lift up to 20 pounds, and would miss more than four days a month as a result of impairments or treatment. Tr. 154. The VE testified that there would be no work for such an individual in the regional or national economy. *Id.*

Plaintiff's counsel asked the VE to assume an individual of the same age, education, and work experience as in the ALJ's first hypothetical who would need to change positions from sitting to standing once every 15 minutes. Tr. 154-55. Plaintiff's counsel asked if such a person could perform competitive employment and the VE responded "yes." Tr. 155. Plaintiff's counsel modified the hypothetical to an individual who had to rest, away from her workstation, more than an hour out of each workday. *Id.* The VE testified that would be inconsistent with competitive employment. *Id.* Plaintiff's counsel posed a hypothetical individual of the same age, education, and work experience as in the ALJ's first hypothetical, and the only limitation would be the individual "would experience frequent interruptions to her concentration as a result of low back pain and medications." *Id.* The VE testified that such an individual would be unable to perform competitive work. *Id.* Plaintiff's counsel again modified the hypothetical to change the limitation to someone who could sit, stand, or walk no longer than five minutes, and "to maintain any type of concentration, they'd have to continually rotate[.]" Tr. 156. The VE testified this individual would be unable to perform competitive employment. *Id.* In response to a question from Plaintiff's counsel, the VE further testified that an individual who, because of chronic pain, "would be limited to activities requiring basic one or two step processes" could not return to the past work of Plaintiff. *Id.*

II.     Discussion

        A.      The ALJ's Findings

        In his April 11, 2011, decision, the ALJ made the following findings of fact and

conclusions of law:

        1.      The claimant's date first insured is July 1, 2000 and her dated last insured
                is December 31, 2010.

        2.      The claimant did not engage in substantial gainful activity during the
                period from her alleged onset date of August 26, 2005 through her date
                last insured of December 31, 2010 (20 CFR 404.1571 *et seq.*).

        3.      Through the date last insured, the claimant had the following severe
                combination of medically determinable impairments: degenerative disk
                disease (2005 history of a mild bulging disc annulus at L4-5, with a very
                small central and slightly left paracentral extruded disc fragment but no
                definite central canal stenosis or neural impingement; a mild asymmetric
                bulging of the disc annulus at L5-S1 but with no significant central canal
                stenosis or neural impingement; both resolved on 2010 MRI); multilevel
                spondylosis and moderate hypertrophic facet arthropathy at L4-5 and L5-
                S1; erosive gastritis; morbid obesity; sleep apnea; chronic obstructive
                pulmonary disease (20 CFR 404.1520(c)).

        4.      Through the date last insured, the claimant did not have an impairment or
                combination of impairments that met or medically equaled one of the
                listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
                404.1520(d), 404.1525, and 404.1526).

        5.      After careful consideration of the entire record, I find that, through the
                date last insured, the claimant had the residual functional capacity to
                perform a wide range of light work as defined in 20 CFR 404.1567(b).

        6.      Through the date last insured, the claimant was capable of performing past
                relevant work as a communications data entry person and telephone
                solicitor.

        7.      The claimant was not under a disability, as defined in the Social Security
                Act, at any time from August 26, 2005, the alleged onset date, through
                December 31, 2010, the date last insured (20 CFR 404.1520(f)).

Tr. 19-49.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for

benefits, who are not of retirement age, who properly apply, and who are "under a disability,"

defined as:

> inability to engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result in
> death or which has lasted or can be expected to last for a continuous period of not
> less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of five

sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing

considerations and noting "need for efficiency" in considering disability claims).  An examiner

must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a

severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5)

whether the impairment prevents the claimant from performing specific jobs that exist in

significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or
"Listed impairments") the Agency considers disabling without the need to assess whether there
are any jobs a claimant could do. The Agency considers the listed impairments, found at 20
C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R.
§ 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the
listed impairments for at least one year, he will be found disabled without further assessment. 20
C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish
that his impairments match several specific criteria or be "at least equal in severity and duration
to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see
Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his
impairment is disabling at Step 3).

7

sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S.

8

389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

Plaintiff argues that the ALJ erred by: (1) failing to properly assess Plaintiff's mental impairments; and (2) failing to properly evaluate the mental demands of Plaintiff's PRW. Pl.'s Br. 21-27, ECF No. 16.

1.    Plaintiff's Mental Impairments

Plaintiff asserts that her mental impairments were more than "slight" and "would limit her ability to work at least on some level." Pl.'s Br. 23. Plaintiff argues that even if the court agreed that her mental impairments were not severe, the ALJ failed to consider the combined effect of all Plaintiff's impairments in assessing her RFC. *Id.* at 24. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not

severe, and the ALJ also "considered these impairments in formulating her RFC, rendering any step two error harmless." Def.'s Br. 14, ECF No. 18.

The regulations provide steps that must be applied in evaluating mental impairments. *See* 20 C.F.R. § 404.1520a. The ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments. 20 C.F.R. §§ 404.1520a(a). Under the special technique, the ALJ first evaluates the claimant's pertinent symptoms, signs, and laboratory findings to substantiate the presence of a medically determinable mental impairment. *Id.* § 404.1520a(b)(1). Then the ALJ rates the claimant's degree of functional limitation resulting from the impairment. *Id.* § 404.1520a(b)(2). The rating determines whether the claimant's impairment is severe or not severe. *Id.* § 404.1520a(d). The ALJ considers four broad functional areas in order to rate a claimant's degree of functional limitation: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C. The ALJ considers factors such as "the quality and level of [the claimant's] overall functional performance, any episodic limitations, the amount of supervision or assistance [the claimant] require[s], and the settings in which [the claimant is] able to function." *Id.* § 404.1520a(c)(2); *see id.* Pt. 404, Subpt. P, App. 1, § 12.00C–H. The ratings for the first three functional areas—activities of daily living; social functioning; and concentration, persistence, or pace—consist of a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). The fourth functional area—episodes of decompensation— uses a four-point scale: none, one or two, three, and four or more. *Id.*

In analyzing Plaintiff's mental impairments, the ALJ noted that the medical record showed "diagnosis and treatment for major depressive disorder, generalized anxiety disorder, and a pain disorder associated with both psychological factors and a general medical condition." Tr. 21. However, the ALJ found that the "medical record indicates that [Plaintiff's] mental

impairments were not severe within the regulatory definition." Tr. 23. As required by the regulations, in his decision the ALJ documented application of the proper technique by incorporating pertinent findings and conclusions as to the degree of limitation in each of the functional areas. Tr. 24.  The ALJ noted that Plaintiff testified to significant ADLs; no social restrictions; no problems with concentration, focus, or pace; and did not report, not does the record contain any episode of extended decompensation. *Id.*  The ALJ concluded that:

> The Regulations state that if we rate the degree of limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that the mental impairment is not severe, unless the evidence otherwise indicated that there is more than a minimal limitation in ability to do basic work activities. . . . Since the claimant has no limitations or mild limitations in all areas of the B criteria, the claimant has no severe mental impairment.

*Id.* Further, in his RFC assessment, the ALJ noted that Plaintiff's mental impairments have caused no functional limitations, Tr. 34, and also cited to the reports of treating physicians Drs. Gettys and Bhatia, Tr. 44.  The ALJ found that "[w]hile Dr. Bhatia has treated the claimant for four years for depression, her records consistently show no associated mental status deficits." Tr. 44.

Upon review of the record, the undersigned finds that the ALJ's conclusion is supported by substantial evidence. The ALJ considered the evidence and Plaintiff's testimony in his functional assessment. "Simply because the plaintiff can produce conflicting evidence which might have resulted in a contrary interpretation is of no moment." *Washington v. Astrue*, 659 F. Supp. 2d 738, 753 (D.S.C. 2009) (citing *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)).  *See generally Jackson v. Astrue*, 8:08-2855-JFA, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) ("[A]n ALJ is not required to provide a written evaluation of every piece of evidence, but need only minimally articulate his reasoning so as to make a bridge between the evidence and its conclusions.") (internal quotation and citations omitted). Accordingly, the undersigned

finds Plaintiff's argument on this point is without merit because the ALJ performed the special

technique for assessing the severity of a claimant's mental impairments and adequately

documented his evaluation of Plaintiff's mental impairments.

2.       ALJ's Evaluation of Plaintiff's PRW

Plaintiff also alleges that, contrary to the requirements of SSR 82-62, the ALJ "failed to

evaluate the mental demands of [Plaintiff's] past work when formulating [her] RFC." Pl.'s Br.

26. The Commissioner contends that the ALJ specifically questioned Plaintiff about her inability

to perform her previous jobs,[5] and consistent with SSR 82-62, "discussed Plaintiff's alleged

work limitations and the related records in great detail." Def.'s Br. 21-22.

> SSR 82–62 provides:
>
> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

SSR 82–62, 1982 WL 31386, at *3 (1982). A claimant bears the burden of demonstrating that

her impairment prevents her from performing her PRW. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th

Cir. 1995). If a claimant can perform PRW either as she performed it or as it is generally

performed in the economy, the claimant is not disabled within the meaning of the Act. SSR 82–

61, 1982 WL 31387, at *2 (1982).    The Commissioner may employ the services of a VE at step

four of the sequential evaluation process to help determine whether a claimant can perform her

---

[5] As noted by the Commissioner, although Plaintiff testified about physical limitations related to her PRW, Plaintiff did not testify as to any mental demands that prevented her from doing her PRW. Tr. 131-32.

PRW. *See* 20 C.F.R. § 404.1560. The Commissioner may rely on the general job categories of the Dictionary of Occupational Titles ("DOT") as presumptively applicable to the claimant's prior work. *DeLoache v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983).

Here, the ALJ found that Plaintiff was capable of performing her PRW as a communications data entry person and telephone solicitor. In doing so, he referenced the job numbers in the DOT and the testimony of the VE, who stated that that the job of data entry was sedentary semi-skilled, and the telephone solicitation was sedentary low semi-skilled. Tr. 48. The ALJ concluded:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform her past relevant work as a communications data entry person and telephone solicitor, both as actually and as generally performed.

Tr. 49. The ALJ complied with SSR 82–62 because he made a finding of fact as to Plaintiff's RFC, Tr. 34-48, determined the demands of Plaintiff's past work through testimony from the VE and from Plaintiff, and determined that Plaintiff's RFC would permit her to return to her PRW, Tr. 48-49. Based on the foregoing, the undersigned recommends a finding that the ALJ properly evaluated Plaintiff's ability to return to PRW. To the extent Plaintiff's argument is based on her contention that the ALJ improperly assessed her mental impairment, the undersigned recommends rejecting that argument for the reasons stated in the preceding section of this Report.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the

whole record, including evidence regarding Plaintiff's mental impairments, and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under the Act, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

January 22, 2014                                     Kaymani D. West
Florence, South Carolina                             United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**